UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID LINDENSMITH, # 488856,

        Petitioner,

v.                                              Case Number: 08-cv-12346
                                                 Honorable Denise Page Hood

MARY BERGHUIS,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

      This is a habeas case filed by a state prisoner pursuant to 28 U.S.C. § 2254. Michigan prisoner David Lindensmith ("Petitioner") is currently incarcerated at the Parnell Correctional Facility in Jackson, Michigan. On June 2, 2008, he filed this *pro se* Habeas Petition challenging his 2004 no-contest-guilty-plea conviction for one count of first-degree criminal sexual conduct ("CSC I") in the Genesee County Circuit Court in Flint, Michigan. Five other counts of CSC I were dismissed by agreement. Petitioner is currently serving ten to thirty years for the CSC I conviction. In his Habeas Petition, he alleges that he was denied his Sixth Amendment right to counsel of his choice, when retained counsel's associate was present at the plea proceedings rather than retained counsel himself, and when the sheriff's department withheld the use of a phone to contact an attorney during the execution of a search of his home. Petitioner also alleges that he was sentenced improperly. For the reasons stated, the Court denies the Petition. The Court also declines to issue Petitioner a Certificate of Appealability.

## I. BACKGROUND

Petitioner's troubles in this case arise because of sexual-abuse allegations that occurred as a result of a report made by the mother of two teenage girls on November 2, 2003. A preliminary examination was held on November 21, 2003, where one of the girls testified to the various incidents of sexual abuse.

On December 8, 2003, Petitioner was charged with six counts of CSC I involving persons under thirteen years of age in the Genesee County Circuit Court. The alleged incidents occurred between 1992 and 1997.

An evidentiary hearing was held on January 22, 2004, to suppress statements Petitioner made to the police. Sergeant Gerald Parks, from the Genesee County Sheriff's Department, testified as follows.

On November 13, 2003, Sergeant Parks and Detective Dwyer, as part of their investigation of the mother's report, went to Petitioner's house and asked him to come down to the police station with them, for questioning. Because Petitioner did not have a car, he rode with the officers to the police station. Once at the station, Petitioner was advised of his rights. He was not under arrest at the time. Petitioner waived his rights. Sergeant Parks testified that Petitioner was cooperative.

Petitioner admitted to taking showers with the girls. He also said that one of the girls touched his penis. After those admissions, he became nervous and requested a lawyer. The interrogation ceased. Petitioner then was arrested. Because the officers believed they had enough information to conduct a search of Petitioner's home, a search warrant was obtained, and Petitioner's home was searched. According to

department policy, Petitioner was not permitted to use the phone while the officers were searching his home. Sergeant Parks further testified that Petitioner subsequently initiated contact with the police.  He was re-advised of his rights and again waived those rights.  He then was re-interviewed. Petitioner also testified at the evidentiary hearing. He said because he was scared and Sergeant Parks threatened to push for a life sentence he decided to cooperate. The lower court denied Petitioner's motion to suppress.

On February 20, 2004, the date of the plea hearing, defense counsel of record, Marc Lakin, did not appear, but rather his associate, Lynn Jovanovich, appeared on behalf of Petitioner.  Petitioner did not object to her appearance.  The lower court's factual basis for the no-contest guilty plea was a Genesee County Sheriff's Department Report, which was read into the record:

> THE COURT:  The investigation began on November 13, 2003, when Deputy Iski interviewed a mother, [], who stated that her two daughters, [] and [],[1] had been sexually molested about ten years ago.
>
> So the deputy spoke first with [] and she said that she and her sister would go to Mr. Lindensmith's house to visit and sometimes he would come to their house.  On occasion he would put his hand down her pants, go inside her underwear and insert his finger into her vagina and she watched him do the same thing to her sister, [].  They said on other occasions he put his erect penis in their mouth.  They said this happened several times over a five-year period.
>
> Frankly, that's the facts, that--that fits it, Mr. DeWitt?
>
> MR. DeWITT:  Did we establish age of each child at the time being under 13.

---

[1] The names of those involved in the incident are omitted to protect their identities.

> THE COURT: The mother stated that they were now, that she said it happened when they were 5- and 6- years old, she stated they are now 15 and 14 and that was on November 3rd, 2003, when she gave us their ages.
>
> MR. DeWITT: Yes, your Honor, I think as to both children as to sexual penetration with them both being under 13 the elements of the crime has [sic] been satisfied by the report.
>
> MS. JOVANOVICH: Defense is satisfied.
>
> THE COURT: [] also offered the statment where she said that Mr. Lindensmith would–in her, well, I'll read this, he would make me touch his penis and he would touch my vagina and put his mouth on it and he would make take showers with him and he put his finger into her vagina several times.
>
> So have we complied with the court rules, Ms. Jovanovich?
>
> MS. JOVANOVICH: Yes, your Honor.

Plea Hr'g Tr., 23-25 Feb. 20, 2004.

On March 19, 2004, the date of sentencing, Petitioner expressed a desire to withdraw his no-contest plea because defense counsel had not provided him with the requested discovery materials. Petitioner's arguments included a claim that the police broke into his house during the course of the investigation and that a video from a nearby bank would demonstrate the same. Attorney Lakin was present during the hearing. The sentencing was adjourned and Attorney Lakin was advised to provide the discovery materials to Petitioner and give him time to decide whether he wished to withdraw his plea.

At the next hearing, on April 27, 2004, Petitioner expressed his desire to withdraw his plea and to fire Attorney Lakin. Rather than addressing the plea

withdrawal, the lower court appointed substitute counsel.  Another hearing was scheduled.

On May 28, 2004, Lynn Jovanovich appeared to testify regarding the plea-withdrawal motion.  However, the hearing was adjourned at the request of substitute counsel, in order to place the motion into written form.

On June 17, 2004, the motion to withdraw the plea was heard.  It was premised on two theories, ineffective assistance of counsel and defective language in the charging document.  The lower court found that the plea process was correct.  The court wanted to schedule an evidentiary hearing regarding Petitioner's claim that counsel was ineffective but Petitioner refused to waive the privilege.

On June 30, 2004, a formal hearing was held on the motion to withdraw Petitioner's no-contest plea.  Therefore, Petitioner declined to waive the privilege regarding ineffective assistance of counsel.  Thus, former counsel could not be questioned, leaving the issues of discovery and the defective language in the charging document to be decided.  The lower court declined to set aside the plea.

At sentencing, on July 7, 2004, Petitioner again moved to withdraw his plea on the basis that counsel was ineffective for giving him bad advice, that he failed to adequately prepare, that he failed to move to challenge his arrest and the search of his home, that he failed to request an independent examination of the victims, and that he failed to object to comments a police officer made to a newspaper.  The lower court stated that Petitioner's objections were limited by his previous refusal to allow prior counsel to testify.  Petitioner responded by stating that he changed his mind.  The lower court stated that his position was one of "gamesmanship."  Petitioner also claimed that

he was a homosexual and therefore innocent of the charges. The lower court proceeded to sentence Petitioner as stated above.

Following his sentencing, Petitioner filed an appeal with the Court of Appeals, raising the claim that the trial court erred in denying his motion to withdraw his no-contest plea. He also filed a supplemental appellate brief, raising the following claims; (1) the trial court violated his plea agreement with the prosecutor and rendered it illusory by scoring fifty points for offense variable (OV) 12; (2) he was denied his right to have a jury decide the facts used to score the offense variables; and (3) he was denied the effective assistance of counsel. The Court of Appeals affirmed his conviction. *People v. Lindensmith*, No. 257259, 2005 WL 2679682 (Mich.Ct.App. Oct. 20, 2005).

Petitioner then filed an application for leave to appeal the Court of Appeals's decision with the Michigan Supreme Court, raising the same claims and adding two new claims concerning the taking of his statements while withholding the use of the phone to contact an attorney. On February 27, 2006, the Supreme Court denied his application. *People v. Lindensmith*, 474 Mich. 1071, 711 N.W.2d 29 (2006) (Kelly, J., would hold this case in abeyance for *People v. Drohan*, lv. gtd. 472 Mich. 881, 693 N.W.823 (2005)). The Supreme Court also denied Petitioner's motion for reconsideration on April 28, 2006. *People v. Lindensmith*, 474 Mich. 1132, 712 N.W.2d 497 (2006) (Kelly, J., would grant reconsideration and, on reconsideration, would hold this case in abeyance for *People v. Drohan*, lv. gtd. 472 Mich. 881, 693 N.W.823 (2005)).

Petitioner filed a petition for writ of certiorari with United States Supreme Court, which was denied. *Lindensmith v. Michigan*, 549 U.S. 845, 127 S.Ct. 79 (2006). His


petition for rehearing also was denied. *Lindensmith v. Michigan*, 549 U.S. 1102, 127 S.Ct. 847 (2006).

Subsequently, Petitioner filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500, with the state trial court, raising three issues: (1) that he was denied his Sixth Amendment right to his counsel of choice; (2) that the trial court lacked authority to amend count one to include a second victim under a new theory; and (3) that his plea bargain was illusory. The trial court denied his motion. *People v. Lindensmith*, No. 03-13125-FH (Genesee County Circuit Court Mar. 12, 2007). Both state appellate courts denied his applications for leave to appeal that decision. *People v. Lindensmith*, No. 277052 (Mich.Ct.App. Aug. 24, 2007); *People v. Lindensmith*, 480 Mich. 1008, 743 N.W.2d 13 (2008).

Petitioner filed this Habeas Petition on June 2, 2008.

## II. STANDARD OF REVIEW

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (AEDPA), which provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20 (2000)). "[T]he 'unreasonable application' prong of [the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534-35 (2003) (quoting *Williams*, 529 U.S. at 413, 120 S.Ct. 1495). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21, 123 S.Ct. at 2535 (citations omitted).

Recently, in *Harrington v. Richter*, --- U.S. ---, 131 S.Ct. 770, 786-87 (2011), the United States Supreme Court held:

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal

rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ----, ----, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

\* \* \*

Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

With those standards in mind, the Court proceeds to address Petitioner's claims.

### III. DISCUSSION

### A. Petitioner's Claims

As an initial matter, Respondent argues that Petitioner's first and third claims are barred by the procedural-default rule. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 1523 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.")). Here, the interests of judicial economy are best served by addressing the merits of Petitioner's procedurally-defaulted claims.

### 1. Ineffective-Assistance-of-Counsel Claims

In his first and third habeas claims, Petitioner argues that he was denied his

Sixth Amendment right of counsel of choice because retained counsel was not present during his plea hearing and the sheriff's office withheld the use of the phone, pending a search of his home.

A defendant in a criminal case has a right to the assistance of counsel in his defense. U.S. Const. amend. VI; *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527 (1975). "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez–Lopez*, 548 U.S. 140, 144, 126 S.Ct. 2557, 2561 (2006) (citations omitted). The *Gonzalez–Lopez* Court stated:

> Where the right to be assisted by counsel of one's choice is wrongly denied, [], it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice—which is the right to a particular lawyer regardless of comparative effectiveness—with the right to effective counsel—which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.

*Id.*, 548 U.S. at 148, 126 S.Ct. at 2563. The Sixth Amendment right to counsel of choice commands "not that a trial be fair, but that a particular guarantee of fairness be provided–to wit, that the accused be defended by the counsel he believes to be best." *Id.*, 548 U.S. at 146, 126 S.Ct. at 2562. The right to counsel of choice, however, is not without limitation.

In *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610 (1983), the United States Supreme Court stated:

10

> Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.

*Id.*, 461 U.S. at 11-12, 103 S.Ct. at 1616 (citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849 (1964)); *see also United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988) ("The important right to counsel of choice is not absolute; it must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court.") (citations omitted); *United States v. Cronic*, 466 U.S. 648, 661, 104 S.Ct. 2039, 2048 (1984) (explaining that not every refusal to postpone a criminal trial gives rise to a presumption of ineffective assistance); *Chambers v. Maroney*, 399 U.S. 42, 54, 90 S.Ct. 1975, 1982-83 (1970) (declining "to fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel").

Petitioner argues that *Gonzalez-Lopez* applies retroactively to cases on collateral review. The Court of Appeals for the Seventh Circuit and several district courts have held that *Gonzalez-Lopez* is not retroactively applicable to cases on collateral review. *Rodriguez v. Chandler*, 492 F.3d 863 (7th Cir. 2007); *Wright v. Stovall*, No. 06-12419, 2008 WL 2224271, at *5 n.2 (E.D. Mich. May 28, 2008); *Wright v. United States*, No. 3:98-cv-355-MU, 2008 WL 943371, at *2 n.2 (W.D.N.C. Apr.7, 2008); *Harris v. DiGuglielmo*, No. 07-213, at * 11 (W.D. Pa. Oct. 22, 2007). The Court, however, need not decide the question of *Gonzalez-Lopez's* retroactivity because the Court finds that

Petitioner was not wrongfully denied his right to counsel of choice.

Petitioner retained Marc Lakin to represent him. Mr. Lakin apparently could not attend his plea proceeding. In his absence, Lynn Jovanovich, Mr. Lakin's associate, represented him. At no time during the hearing did Petitioner object to Ms. Jovanovich's representation nor did he alert the lower court to the fact that he was dissatisfied with Ms. Jovanovich. Nor did he indicate that refusing to allow him to use the phone during the search of his house preclude his ability to obtain counsel of choice. "[A] defendant wishing to substitute counsel must 'bring any serious dissatisfaction with counsel to the attention of the [trial] court.'" *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (quoting *United States v. Iles*, 906 F.2d 1122, 1131-32 (6th Cir. 1990) (requiring the defendant to "show his hand" by alerting the district court of his desire to substitute counsel)).

Petitioner has failed to show that he was deprived of retained counsel of choice or of effective assistance of counsel. Given the "wide latitude" afforded courts in balancing the right to counsel of choice against the needs of fairness and the demands of the calender, the last-minute nature of the request, and the prior adjournments, the Court concludes that Petitioner is not entitled to habeas relief with respect to this claim.

Moreover, Petitioner's claims are waived by his voluntary plea. It is settled law that a valid guilty plea in a criminal proceeding generally forecloses claims arising from the alleged deprivation of constitutional rights occurring before the entry of the plea. *See United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602 (1973). The Supreme Court has explained:

12

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267, 93 S.Ct. at 1608. A defendant who pleads guilty generally waives any non-jurisdictional claims that arose before his plea. *See United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001) (citation omitted); *Siebert v. Jackson*, 205 F.Supp.2d 727, 733-34 (E.D. Mich. 2002) (citations omitted). In such a case, the Court's inquiry is limited to whether the plea was knowing, intelligent, and voluntary. *See Broce*, 488 U.S. at 569, 109 S.Ct. at 762.

As the United States Supreme Court stated in *Brady v. United States*, 397 U.S. 742, 756, 90 S.Ct. 1463, 1473 (1970), "the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." Consequently,

> [t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Id.* (citation omitted).

Such is the case here. The plea-hearing transcript demonstrates a knowing, intelligent, and voluntary plea. Petitioner never indicated to the lower court that retained

13

counsel's colleague was unsatisfactory or that refusing him to use the phone during execution of the search warrant precluded his ability to obtain counsel of choice. Furthermore, retained counsel appeared during the sentencing and noted that he had advised Petitioner that a plea was his best option, given Petitioner's incriminating statements to the police. The Court finds that Petitioner has failed to establish how his decision to plead would have been different had retained counsel personally appeared at the hearing or had been contacted prior to execution of the search warrant.

Accordingly, the Court concludes that Petitioner is not entitled to habeas relief with respect to these claims.

### 2. Sentencing Claim

Petitioner next alleges that his sentence was improperly scored under the State sentencing guidelines, because the trial court considered evidence of the separately charged penetrations dismissed as part of his plea when scoring OV 12. This claim is based on state law and cannot form the basis for habeas relief. *Swarthout v. Cooke*, --- U.S. ---, 131 S.Ct. 859, 861 (2011) ("federal habeas corpus relief does not lie for errors of state law.") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102 (1990)); *see also Landrum v. Mitchell*, 625 F.3d 905, 913 (6th Cir. 2010) (same). In Michigan "a sentencing court is allowed to consider a defendant's separate criminal activity for which no conviction resulted, provided the defendant is given an opportunity, [], to refute the facts or charges." *People v. Wiggins*, 151 Mich.App. 622, 626, 390 N.W.2d 740, 742 (1986) (citation omitted).

Additionally, to the extent Petitioner claims that his sentence violates Michigan's

requirement that a sentence be proportional to the offense, such claim likewise is not cognizable. Because the United States Constitution contains no strict proportionality guarantee, see Harmelin v. Michigan, 501 U.S. 957, 965, 111 S.Ct. 2680 (1991), a claim that the sentencing court violated Michigan's principle of proportionality implicates only state law. See Lunsford v. Hofbauer, 52 F.3d 325 (6th Cir. 1995); Welch v. Burke, 49 F.Supp.2d 992, 1009 (E.D. Mich. 1999). To the extent that Petitioner relies upon the Michigan proportionality rule his claim is solely one of state law which is not cognizable on federal-habeas review.

To the extent that Petitioner claims that his sentence violates the Eighth Amendment prohibition against cruel and unusual punishments, his claim cannot be supported by clearly established Supreme Court precedent. "A sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" United States v. Organek, 65 F.3d 60, 62-63 (6th Cir. 1995). Petitioner's sentence does not exceed that allowed under Michigan law. The Eighth Amendment "does not require strict proportionality between crime and sentence." United States v. Layne, 324 F.3d 464, 473 (6th Cir. 2003).

Under Michigan law, the statutory maximum sentence for CSC I is life imprisonment or any term of years. Mich. Comp. Laws § 750.520b(2). At the plea hearing, it was made expressly clear that there was no sentencing agreement. Petitioner stated that he understood the maximum penalty for his plea was life imprisonment. He was sentenced to ten to thirty years, a sentence well within the statutory maximum.

Petitioner also claims that consideration of the penetrations when scoring OV 12

15

was erroneous, because a conviction for at least one of the other five penetrations would have violated double jeopardy. Petitioner fails to acknowledge that there were two victims in this case and multiple penetrations. He is essentially attempting to federalize a noncognizable challenge to his valid state-law sentence.

For those reasons, the Court finds that Petitioner is not entitled to habeas relief regarding his sentencing claim.

### B. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a [COA] when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 1604 (2000) (citation omitted). In this case, the Court

concludes that reasonable jurists would not debate its conclusion. Therefore, the Court will **DECLINE** to issue Petitioner a COA.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Petition for Writ of Habeas

Corpus [Dkt. # 1] is **DENIED**.

It is further **ORDERED** that the Court **DECLINES** to issue Petitioner a COA.

**IT IS SO ORDERED.**


    S/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE


Dated: September 29, 2011


I hereby certify that a copy of the foregoing document was mailed to David Lindensmith 488856, Parnall Correctional Facility, 1780 E. Parnall, Jackson, MI 49201 and the attorneys of record on this date, September 29, 2011, by electronic and/or ordinary mail.

    S/Julie Owens
Case Manager, (313) 234-5160